### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DANNY RAFFRAY** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 10-1017** |
| | * | |
| **GULF LOGISTICS, LLC ET AL.** | * | **SECTION "L" (1)** |

### <u>ORDER & REASONS</u>

Before the Court is Plaintiff's Motion to Strike Jury Demand (Rec. Doc. No. 23). The

Court has reviewed the submitted memoranda and applicable law and is ready to rule. For the

following reasons, the motion is granted.

## I. BACKGROUND AND PRESENT MOTION

This case arises out of injuries sustained by Plaintiff Danny Raffray on April 14, 2009

while aboard the M/V MS Madison in the Gulf of Mexico. Plaintiff avers that Defendant Gulf

Logistics Operating, Inc. ("Gulf Logistics") employed him as a member of the crew of the M/V

MS MADISON, which was owned by Defendant 2M Ventures. Pl.'s Supp. & Am. Compl. para.

4. (Rec. Doc. No. 13). On that day, according to Plaintiff, the vessel was backed into a platform

located in the Gulf of Mexico that was owned and/or operated by C&D Production Specialist

Co., Inc ("C&D"). *Id.* Plaintiff alleges that while he was acting within the course of his

employment on the vessel, a C&D crane operator attempted to shift a cargo basket on the deck of

the M/V MS MADISON. *Id.* para. 6. In doing so, the operator swung the basket, hitting Plaintiff

and knocking him into a stack of pallets on the vessel deck. *Id.* para. 8. Plaintiff avers that as a

result, he sustained severe injuries, including to his legs and neck. *Id.* para. 6, 9, 10.

Plaintiff has filed suit in this Court against his employer Gulf Logistics, the vessel owner

2M Ventures, and the platform owner/operator C&D. In his Complaint, Plaintiff states that he is bringing suit under the Jones Act, 46 U.S.C. § 30104, and under general maritime law, and he has designated his claims as such under Federal Rule of Civil Procedure 9(h). Pl.'s Supp. & Am. Compl. para. 2. In their answers, Defendants have denied liability and demanded a trial by jury. *See* Answer & Rule 12(b) Defenses to Compl. by C&D Prod. at 5-6 (Rec. Doc. No. 15); Answer on Behalf of Gulf Logistics Operating, Inc. & 2M Ventures, Inc. to First Supp. & Am. Compl. at 5 (Rec. Doc. No. 20).

On September 1, 2010, Plaintiff filed the present Motion to Strike Jury Demand (Rec. Doc. No. 23). Plaintiff argues that he has designated his claims under Rule 9(h) and thus invoked this Court's admiralty jurisdiction. Plaintiff asserts that as a consequence, there is no right to jury trial with respect to his claims. All three Defendants oppose the motion. Defendant C&D argues that properly understood, Plaintiff's claim against it arises under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.*, and that it can therefore invoke the right to a trial by jury guaranteed by the Seventh Amendment. Meanwhile, Defendants Gulf Logistics and 2M Ventures argue that if Defendant C&D is entitled to a trial by jury, then Plaintiff's claims with respect to them should also be tried by a jury because there should be a common finder of fact for what is essentially one lawsuit.

## II. LAW AND ANALYSIS

### 1. Plaintiff's Claim Against C&D

The Seventh Amendment preserves the right to trial by jury "[i]n Suits at common law, where the value in controversy . . . exceed[s] twenty dollars." U.S. Const. amend. VII. As the Supreme Court stated long ago, "the phrase 'common law,' found in this clause, is used in

2

contradistinction to equity, and admiralty, and maritime jurisprudence." *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 446 (1830). The Seventh Amendment has thus been understood not to extend the right to a jury trial to cases in admiralty, which have historically been tried without juries. *See Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963); *Waring v. Clarke*, 46 U.S. (5 How.) 441, 460 (1847); *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1216 (5th Cir. 1986) ("Of course, it is uncontested that admiralty jurisdiction gives no right to a jury trial").[1]

"The unification of the admiralty and civil rules in 1966 was intended to work no change" to this general rule. *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir. 1975). The merger of the rules did bring to fore, however, the possibility that "pleadings [could] show . . . both admiralty and some other basis of federal jurisdiction," thereby making it unclear whether the unique procedural features of admiralty jurisdiction would apply in a given case. *Id.* Federal Rule of Civil Procedure 9(h) was thus adopted in order to "preserv[e] the present power of the pleader to determine whether the[] historically maritime procedures," such as the nonjury trial, would be "applicable to his claim or not." Fed. R. Civ. P. 9(h), Advisory Committee's Note, 39 F.R.D. 69, 75 (1966).

The result is that when a plaintiff properly designates his claim as one that is in admiralty and thereby invokes the court's admiralty jurisdiction pursuant to Rule 9(h), the court is to adjudicate the claim without a jury. *E.g.*, *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577

---

[1] To be sure, Congress may depart from this rule and provide for a jury trial by statute, *see Fitzgerald*, 374 U.S. at 20-21, when it exercises its power to "alter, qualify or supplement" maritime law, *Panama R. Co. v. Johnson*, 264 U.S. 375, 388 (1924). But Defendant C&D does not argue that there is a statutory provision regarding maritime law that provides it with the right to have Plaintiff's claim against it be tried by a jury.

F.2d 968, 986-87 (5th Cir. 1978). As the Fifth Circuit has explained, there is "no right to a jury trial when the complaint contains a statement identifying the claim as an admiralty or maritime claim, even though [another basis for] jurisdiction exists as well." *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587 (5th Cir. 1983); *accord Durden v. Exxon Corp.*, 803 F.2d 845, 849 n.10 (5th Cir. 1986); *Rachal*, 795 F.2d at 1216; *Harrison*, 577 F.2d at 986-87; *Romero*, 515 F.2d at 1252.

In this case, Plaintiff has designated his claim against C&D as one that is in admiralty, and he has invoked this Court's admiralty jurisdiction under 28 U.S.C. § 1333(1). *See* Pl.'s Supp. & Am. Compl. para. 2. The question, then, is whether Plaintiff has properly done so. If he has, then the designation under 9(h) controls, and the Court, sitting in admiralty, must adjudicate his claim against C&D without a jury. *See, e.g.*, *Harrison*, 577 F.2d at 986 (noting that "by electing to proceed under 9(h) . . . , the plaintiff may preclude the defendant from invoking the right to trial by jury which may otherwise exist"); *see also Rachal*, 795 F.2d at 1216 (noting that "once the plaintiff pleads his case in admiralty . . . , the federal court sits in admiralty and no party has the right to a jury trial"). If he has not, then the Court must discern the jurisdictional basis for his claim against C&D and ascertain whether a right to trial by jury exists.

To determine whether a tort claim is cognizable under admiralty jurisdiction, a court must apply the two-prong test laid out by the Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). In that case, the Court held that for admiralty jurisdiction to be invoked over a tort claim, it must "satisfy conditions both of location and of connection with maritime activity." *Id.* at 534. The location test requires the court to "determine whether the tort occurred on navigable water." *Id.* To do so, the court must focus on "where the

4

alleged wrong took effect rather than the locus of the allegedly tortious conduct." *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 456 (5th Cir. 1999) (citing *Wiedemann & Fransen APLC v. Hollywood Marine, Inc.*, 811 F.2d 864, 866 (5th Cir. 1987)); *accord Parker v. Gulf City Fisheries*, 803 F.2d 828, 829-30 (5th Cir. 1986) ("We have long held that 'so long as the place of the injury . . . occurs upon navigable waters, the fact that the negligent act may have occurred on shore is of no relevance.'"(quoting *Sperry Rand Corp. v. Radio Corp. of Am.*, 618 F.2d 319, 321 (5th Cir. 1980))).

"The connection test," meanwhile, "raises two issues." *Grubart*, 513 U.S. at 534. First, a court "must 'assess the general features of the type of incident involved' to determine whether the incident has a 'potentially disruptive impact on maritime commerce.'" *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 364 n.2 (1990)). This question must be answered by characterizing the incident "at an intermediate level of possible generality." *Id.* at 538.[2] Second, a court "must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id.* at 534 (quoting *Sisson*, 497 U.S. at 365, 364 & n.2). In cases involving multiple alleged tortfeasors, the bar for this is relatively low: the test is met "as long as one of the putative tortfeasors was engaged in traditional maritime activity." *Id.* at 541 (citing *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982)).

In this case, all of these conditions are satisfied. First, although the locus of the allegedly

---

[2] In *Grubart*, the Supreme Court explained that a court must "describe[] the features of the incident in general terms," but not in such a way that the description is "too general" to be meaningful. 513 U.S. at 538. Thus, for instance, the fire on the vessel that was at issue in *Sisson* should not be described as simply a "fire." *Id.* Rather, it should be viewed, as the Court stated in *Sisson*, as "a fire on a vessel docked at a marina on navigable waters." *Id.* (quoting *Sisson*, 497 U.S. at 363). The overall aim is to determine "whether the incident [is part of] a class of incidents" that has the potential to disrupt maritime commerce. *Id.* at 539.

tortious conduct was the operation of the crane by C&D on the platform, that conduct caused injury onboard the M/V MS MADISON in the Gulf of Mexico. Thus, "the alleged wrong took effect"on navigable water. *Egorov*, 183 F.3d at 456. Second, the alleged incident, characterized at an intermediate level of generality, consists of the negligent operation of a crane on a platform that, in turn, injures a worker on a vessel. This is undoubtedly "of a sort with potential to disrupt maritime commerce." *Scarborough v. Clemco Indus.*, 391 F.3d 660, 664 (5th Cir. 2004). Indeed, injuring a worker on a vessel "can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel." *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (en banc).

Finally, this is a case involving multiple alleged tortfeasors, and Plaintiff has asserted that the owner of the vessel on which he worked, 2M Ventures, and his employer, Gulf Logistics, failed to provide a seaworthy vessel and a safe place to work and that this contributed to the incident at issue. *See* Pl.'s Supp. & Am. Compl. para. 13. It is well settled that a claim alleging the failure to provide a seaworthy vessel or one on which it is safe to work relates to a traditional maritime activity. *See, e.g.*, *Strong v. B.P. Exploration & Prod., Inc.*, 440 F.3d 665, 669-70 (5th Cir. 2006); *see also Scarborough*, 391 F.3d at 665. Thus, the connection test under *Grubart* is also satisfied, and Plaintiff's tort claim against Defendant C&D is properly cognizable under this Court's admiralty jurisdiction. The Court must, as a result, give effect to the procedural consequences that attend to that exercise of jurisdiction, including a non-jury trial.

It is true that the OCSLA, by its broad language, can be viewed as providing an alternative jurisdictional basis for Plaintiff's claim against C&D. That statute confers upon the federal districts courts "jurisdiction of cases . . . arising out of, or in connection with[,] any

operation conducted on the outer Continental Shelf [OCS] which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf." 43 U.S.C. § 1349(b)(1). As the Fifth Circuit has observed, the language of this grant of subject-matter jurisdiction is "very broad," *Tenn. Gas. Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996), and the maneuvering of a crane on a platform may be an "operation" on the OCS within the meaning of the statute, *see Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1207 (5th Cir. 1988) (construing the term "operation" as "the doing of some physical act").

But under Rule 9(h) of the Federal Rules of Civil Procedure, the fact that an alternative basis for subject-matter jurisdiction exists is inconsequential. Rule 9(h) is the very "device by which the [plaintiff] may claim the special benefits of admiralty procedures and remedies, including a nonjury trial, when the [complaint] show that both admiralty and some other basis for federal jurisdiction exist." *Romero*, 515 F.2d at 1252; *accord Durden*, 803 F.2d at 849 n.10 (noting that Rule 9(h) "preserv[es] . . . the plaintiff's right to choose the procedural consequences of a civil or admiralty action, by choosing the jurisdictional basis of the action and designating that basis in the complaint"); *Rachal*, 795 F.2d at 1216; *T.N.T. Marine Serv.*, 702 F.2d at 586-87; *Harrison*, 577 F.2d at 986-87. Thus, the fact that this Court may have OCSLA jurisdiction over Plaintiff's claim against C&D is of no consequence. Plaintiff has properly exercised his right under Rule 9(h) to invoke this Court's admiralty jurisdiction.

Even if one were to assume that OCSLA jurisdiction exists, it is important to note that the OCSLA is "not intended to displace general maritime law." *Tenn. Gas Pipeline*, 87 F.3d at 154. As the Fifth Circuit has explained, the OCSLA "does not necessarily transform maritime

7

claims falling within its jurisdictional grant into claims arising under federal law." *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999). The OCSLA contemplates that general maritime law continues to govern if it does "'of its own force,'" *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 783 (5th Cir. 2009) (en banc) (quoting *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990)),[3] and that where it does, there is no right to a trial by jury, *see Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co., Inc.*, 448 F.3d 760, 771 & n.6 (5th Cir. 2006) (noting, after concluding that OCSLA jurisdiction exists, that "we must determine the applicable substantive law in order to address whether the denial of jury trial was reversible error").

 The rule that general maritime law is to apply if it does "of its own force" means that if there is also admiralty jurisdiction over the claim, general maritime law is to govern. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1229 (5th Cir. 1985) (noting that "where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law"); *see also Strong*, 440 F.3d at 668-69 (determining whether maritime law applies of its own force to a tort claim by analyzing whether admiralty jurisdiction exists over the claim under *Grubart*). This reflects the fact that "[w]ith admiralty jurisdiction comes the application of substantive admiralty law." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1986). As noted

---

 [3] The OCSLA conceives of "artificial structures" on the OCS, such as fixed platforms, as "upland islands," *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986), and it provides that the laws of the state adjacent to such structures are to govern as federal law "to the extent that they are applicable," 43 U.S.C. § 1333(a)(2)(A). For state law to apply as surrogate federal law under this provision, "three conditions must be met: '(1) The controversy must arise on a situs covered by [the] OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.'" *Grand Isle Shipyard*, 589 F.3d at 783 (quoting *PLT*, 895 F.2d at 1047).

above, there is admiralty jurisdiction over Plaintiff's claim against Defendant C&D.

Accordingly, even if one were to assume that Plaintiff has not exercised his right under Rule 9(h)

to specifically invoke admiralty jurisdiction and its accompanying procedures, and even if one

were to assume that the OCSLA provides one jurisdictional basis for his claim against Defendant

C&D, there is overlapping admiralty jurisdiction that renders maritime law applicable and that,

as a consequence, mandates a non-jury trial in this case. *See Texaco*, 448 F.3d at 771 & n.6.

   In its memorandum, Defendant C&D cites to a number of cases in an effort to argue that

Louisiana law applies under the OCSLA and that there is otherwise no admiralty jurisdiction.

But a close examination of these cases indicates that they are of no help to Defendant. First,

Defendant cites to a number of cases involving contractual claims. *See Grand Isle Shipyard*, 589

F.3d at 789; *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1527-28 (5th Cir. 1996); *Dennis v. Bud's

Boat Rental, Inc.*, 987 F. Supp. 948, 950-51 (E.D. La. 1997). But as Defendant itself

acknowledges, the analysis that must be undertaken to determine whether admiralty jurisdiction

extends to a contractual claim is different from that which applies to a tort claim. *E.g.*, *Alleman

v. Omni Energy Servs. Corp.*, 580 F.3d 280, 285 (5th Cir. 2009). *Compare also Davis & Sons,

Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir. 1990) (analysis for contract claims), *with

Grubart*, 513 U.S. at 534 (analysis for tort claims). The fact that certain contractual claims have

been held to lie outside the scope of admiralty jurisdiction has no bearing on whether Plaintiff's

tort claim against C&D proper falls within that grant of jurisdiction.

   Second, Defendant C&D cites to two cases in which tort claims against platform-related

defendants were held not to be maritime in nature, but these antedate *Grubart*. *See In re

Dearborn Marine Serv., Inc.*, 499 F.2d 263, 275 (5th Cir. 1974); *West v. Chevron USA, Inc.*, 615

F. Supp. 377, 382 (E.D. La. 1985). In these cases, the courts applied the multi-factor test that the Fifth Circuit first enunciated in *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir. 1973), in order to determine whether admiralty jurisdiction extends to the tort claims at issue. *See Dearborn*, 499 F.2d at 275; *West*, 615 F. Supp. at 379.[4] In *Grubart*, however, the Supreme Court expressly rejected that test. *See* 513 U.S. at 544-48; *see also Coats*, 61 F.3d at 1118 (en banc) (recognizing that the Supreme Court did so).

Third, Defendant C&D cites to cases in which tort claims against platform-related defendants were held not to be maritime in nature, but to the extent that they apply or are otherwise consistent with *Grubart*,[5] these decisions are factually distinguishable. *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 359-61 (1969); *Texaco*, 448 F.3d at 771; *Ausama v. Tetra Applied Tech., LP*, No. 05-2513, 2006 WL 1968858, at *5 (E.D. La. 2006); *Theriot v. BP Corp. N. Am. Inc.*, 216 F. Supp. 2d 651, 654-55 (S.D. Tex. 2002). In some of these cases, the personal injury occurred on the platform itself, and thus the location test under *Grubart* was not satisfied. *See Ausama*, 2006 WL 1968858, at *5; *Theriot*, 216 F. Supp. 2d at 655. In the other cases, the plaintiffs did not make claims against any party that was otherwise engaged in a traditional maritime activity, and as a result, the plaintiffs were unable to show that their claim against the

---

[4] *Dearborn* did not recite the *Kelly* factors, but it is apparent that the court was examining those elements. *Compare Dearborn*, 499 F.2d at 275 (noting, *inter alia*, that the decedent "was a platform worker" and that "the physical cause of his death was the platform explosion"), with *Kelly*, 485 F.2d at 525 (noting that "the functions and roles of the parties" and "the causation and the type of injury" are among several of the factors to be analyzed to determine whether there is admiralty jurisdiction over a tort claim). *West* expressly cited *Kelly* before analyzing the various factors. *See West*, 615 F. Supp. at 379.

[5] *Rodrigue* antedates *Grubart*, but can be viewed as consistent with that later decision. In *Texaco*, the Court of Appeals did apply the *Grubart* test. *See Texaco*, 448 F.3d 770-71.

platform-related defendant had a sufficient maritime nexus.[6]

Finally, Defendant cites to a number of cases that purport to apply *Grubart*, but in which the courts declined to exercise admiralty jurisdiction over tort claims made against platform-related defendants, despite the fact that the plaintiffs also alleged that vessel-related defendants were liable. *See Cenac Towing Co., Inc. v. Neal*, No. 07-1458, 2008 WL 239758, at *1, *2 (E.D. La. 2008); *Henson v. Odyssea Vessels, Inc.*, No. 07-613, 2007 WL 3343011, at *1, *2-*3 (E.D. La. 2007); *Dozier v. Rowan Drilling Co., Inc.*, 397 F. Supp. 2d 837, 841, 849-51 (S.D. Tex. 2005); *Debellefeuille v. Vastar Offshore*, 139 F. Supp. 2d 821, 822, 823-24 (S.D. Tex. 2001); *Solet v. CNG Producing Co.*, 908 F. Supp. 375, 376, 378 (E.D. La. 1995). It should be noted, however, that none of these decisions adhere to the Supreme Court's holding in *Grubart* that there is a sufficient connection to traditional maritime activity "as long as one of the putative tortfeasors engaged in [such] activity." *Grubart*, 513 U.S. at 541.

In *Debellefeuille*, the court acknowledged that rule of decision, but declined to follow it in light of a concurring opinion in *Grubart*. *See* 139 F. Supp. 2d at 824. The Fifth Circuit has squarely rejected this analytical path, however, noting that the language of the majority opinion

---

[6] The defendants in in *Rodrigue* were a platform owner and two of its independent contractors, which were engaged in drilling and related services. *See Rodrigue v. Aetna Cas. & Sur. Co.*, 266 F. Supp. 1, 3 (E.D. la. 1967), *aff'd*, 395 F.2d 216 (5th Cir. 1968), *rev'd*, 395 U.S. 352 (1969). In the case that was consolidated with *Rodrigue* in the Supreme Court, the defendants were companies that were alleged to have "sold, manufactured, supplied, and installed" a crane that, upon collapsing, killed a platform worker. *See Dore v. Link Belt Co.*, 391 F.2d 671, 673 (5th Cir. 1968), *rev'd sub nom.*, *Rodrigue*, 395 U.S. 352. In *Texaco*, the lessees of an offshore federal lease sued the successor to the company that designed and manufactured a crane that failed during the construction of the platform and that thereby caused a deck module to fall into the sea, as well as the company that was charged with designing and constructing the platform. *See Texaco*, 448 F.3d at 765-66. In none of these cases were vessel-related entities named defendants.

in *Grubart* is plain and that it requires a finding of admiralty jurisdiction if at least one tortfeasor engaged in traditional maritime activity. *See Scarborough*, 391 F.3d at 665-66.[7] In the remaining cases, the courts did not acknowledge the aforementioned rule under *Grubart* perhaps because they implicitly agree with the reasoning in *Debellefeuille*. Given that these cases do not adhere to the Supreme Court's holding in *Grubart* and the Fifth Circuit's admonition that this holding is controlling, the Court finds that these cases are not persuasive.

Ultimately, Defendant C&D attempts to extract from all of the cases that it cites the categorical proposition that a tort claim that arises out of some allegedly negligent activity originating on a platform cannot be deemed an admiralty claim. This proposition is unsound, however, because it is inconsistent with the Fifth Circuit's recognition that in determining the situs of a tort for purposes of admiralty jurisdiction, "[t]he fact that [a defendant's] negligence . . . may have occurred on land is . . . not decisive." *Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127, 128 (5th Cir. 1988). As the Court of Appeals has observed, "admiralty jurisdiction has repeatedly been extended to cases in which death or injury occurred on navigable waters even though the wrongful act occurred on land." *Smith v. Pan Air Corp.*, 684 F.2d 1102, 1111 (5th

---

[7] There is a divergence of views in the legal academy about the import of *Grubart*. On the one hand, Professor David Robertson has argued that *Grubart*, properly read, does not hold that there is admiralty jurisdiction over an alleged tortfeasor if one of the alleged joint tortfeasors engaged in maritime activity. *See* David W. Robertson, *Admiralty Jurisdiction Over One Co-Tortfeasor Cannot Effectuate Admiralty Jurisdiction Over Another*, 37 J. Mar. L. & Com. 161, 161-62 (2006). According to Professor Robertson, the Fifth Circuit in *Scarborough* erred in its interpretation of *Grubart*. *Id.* at 167-170. On the other hand, Professor Frank Maraist and Professor Thomas Galligan have read *Grubart* in the same way as the Court of Appeals did in *Scarborough*, noting that under *Grubart*, there is admiralty jurisdiction over a land-based tortfeasor if another tortfeasor engaged in maritime activity. *See, e.g.*, Frank Maraist & Thomas C. Galligan, Jr., *Admiralty in a Nutshell* 338-39, 390 (5th ed. 2005); Thomas C. Galligan, Jr., *The Admiralty Extension Act at Fifty*, 29 J. Mar. L. & Com. 495, 505 (1998).

Cir. 1982). In this case, "[t]he [mere] fact that [Plaintiff] alleges his injury was caused by the operation of a land-based crane does not change the maritime nature of his claim." *Kamani v. Port of Houston Auth.*, 702 F.2d 612, 613 (5th Cir. 1983).

In sum, Plaintiff's claim against Defendant C&D must be tried without a jury. Pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, Plaintiff has invoked this Court's admiralty jurisdiction over that claim, and in light of *Grubart*, Plaintiff has properly done so. Accordingly, the Court must give effect to the procedural consequences of that invocation, and Plaintiff's motion to strike the jury demand made by Defendant C&D must therefore be granted. *See Durden*, 803 F.2d at 849 n.10; *Rachal*, 795 F.2d at 1216; *T.N.T. Marine*, 702 F.2d at 587; *Harrison*, 577 F.2d at 986-87; *Romero*, 515 F.2d at 1252; *see also Duet v. Falgout Offshore, LLC*, No. 09-3321, 2010 WL 1817766, at *5 (E.D. La. 2010) (granting motion to strike).

## 2. Plaintiff's Claims Against Gulf Logistics and 2M Ventures

In their brief, Defendants Gulf Logistics and 2M Ventures argue that if Defendant C&D is entitled to a trial by jury, then Plaintiff's claims with respect to them should also be tried by a jury because there should be a common finder of fact for what is essentially one lawsuit. Because the Court concludes that Plaintiff's claim against Defendant C&D is to be tried without a jury, this argument is moot. Defendants Gulf Logistics and 2M Ventures have raised no other arguments in opposition to Plaintiff's motion to strike their jury demand.

Moreover, in light of the above, it is clear that Plaintiff's claims against 2M Ventures, the owner of the vessel on which Plaintiff was allegedly injured, and Gulf Logistics, his employer, are cognizable under the Court's admiralty jurisdiction. To be sure, Plaintiff has asserted a Jones Act claim against Gulf Logistics. But the Fifth Circuit has explained that if there is no diversity

13

of citizenship, the Jones Act provides only the plaintiff with the right to choose a trial by jury. *Rachal*, 795 F.2d at 1213-14. No party to this case has alleged that there is diversity of citizenship. Accordingly, Plaintiff's claims against Gulf Logistics and 2M Ventures are to be tried without a jury, and Plaintiff's motion to strike their jury demands must be granted.

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion to Strike Jury Demand (Rec. Doc. No. 23) is hereby **GRANTED**. The trial set for April 18, 2011 shall be without a jury and shall begin at 9:00 a.m.

New Orleans, Louisiana, this 2nd day of December, 2010.

UNITED STATES DISTRICT JUDGE